UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**JOEL PAUL CORTES ,**

                        **Plaintiff,**                                             19-CV-19Sr

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on June 1, 2015, alleging disability beginning January 31, 2013, at the age of 31, due to post-traumatic stress disorder ("PTSD"), depression and anxiety. Dkt. #7, pp.96-97.

On December 12, 2017, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Rachel Duchon, at an administrative

hearing before Administrative Law Judge ("ALJ"), Melissa Lin Jones. Dkt. #7, pp.33-84. Plaintiff testified that he has been homeless since he filed for benefits. Dkt. #7, pp.38-39. He completed eleventh grade and obtained his general equivalency diploma. Dkt. #7, pp.42-43. He was an information systems technician for the Navy until he was placed in the brig for unauthorized absence. Dkt. #7, pp.43-45. Plaintiff's work history included numerous jobs, including as a laborer, dishwasher and delivery driver. Dkt. #7, pp.46-54. He was currently looking for work, but explained that whenever he speaks with someone regarding a job, his anxiety shows "and people don't really want to hire somebody who's nervous and shaky." Dkt. #7, p.55. He recently obtained a New York State driver's license to replace his expired Pennsylvania license, but rarely drove, not only because he did not have a vehicle, but because he understood he shouldn't drive due to his inability to pay attention. Dkt. #7, p.40.

Plaintiff has difficulty sleeping and testified that the smallest thing wakes him up. Dkt. #7, p.60. Sometimes he wakes up thinking he is "at war, still." Dkt. #7, p.60. He is always on guard and has flashbacks every day or every other day. Dkt. #7, p.61. He explained that he has no stability and nothing seems to be getting better. Dkt. #7, p.61. Sometimes, he won't sleep or eat for days. Dkt. #7, pp.61-62. He recognized the impact of sexual and physical abuse as a child but explained that he was unable to work on these issues when he didn't know where his next meal was coming from. Dkt. #7, pp.63-64. He experiences panic attacks and is depressed every day, even with his medication, causing him to wish his life would end. Dkt. #7, pp.66-67. Plaintiff recognized that he probably should have been hospitalized at various times, but expressed fear of having his freedom taken away from him. Dkt. #7, pp.72-73.

When asked to assume an individual with the residual functional capacity ("RFC"), to perform work at all exertional levels, but was limited to simple, routine, repetitive tasks, not at a production-rate pace, with occasional interactions with supervisors, and rare interaction with coworkers and the public, and limited to simple decisions when dealing with changes in the work setting, the VE testified that plaintiff could not perform any of his past work, but could work as a laundry laborer or factory helper, both of which are unskilled, medium exertion positions, or as a warehouse support worker, which is an unskilled, light exertion position.  Dkt. #7, pp.79-80. The VE testified that such positions would allow a maximum of 15% off-task in an eight-hour day and no more than one day absent per month. Dkt. #7, p.80.

The ALJ rendered a decision that plaintiff was not disabled on January 29, 2018. Dkt. #7, pp.19-24. The Appeals Council denied review on November 6, 2018. Dkt. #7, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on January 3, 2019. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to

the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of January 31, 2013; (2) plaintiff's PTSD, anxiety disorder and depressive disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels but is limited to simple, routine, repetitive work, not at a production rate pace, with occasional interaction with supervisors and rare interaction with coworkers and the public, and is limited to simple decisions when dealing with changes in the work setting; and (5) plaintiff was not capable of performing any of his past work as those positions required too much interaction with others and more than just simple, repetitive tasks, but was capable of performing work as a laundry laborer or factory helper, both of which are unskilled, medium exertion positions, or as a warehouse support worker, which is an unskilled, light exertion position, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.16-23.

Plaintiff challenges the ALJ's evaluation of Dr. Tzetzo's opinion and the weight afforded Dr. Fabiano's opinion, arguing that the ALJ rejected portions of their opinions without explanation and also failed to explain how their opinions supported his RFC determination. Dkt. #8-1, pp.15-17. Plaintiff argues that the ALJ should have

sought clarification as to the impact of Dr. Fabiano's opinion of moderate limitations in plaintiff's ability to maintain attention and concentration and deal with stress on plaintiff's ability to remain on task for a full workday, and should have sought an opinion from plaintiff's treating sources with respect to these functional limitations. Dkt. #8-1, pp.18-23. Plaintiff also argues that the ALJ mischaracterized plaintiff's medical record without seeking a medical source opinion from his health care providers, especially from Dr. Vasquez, with whom plaintiff treated for three years. Dkt. 8-1, pp.23-26. Plaintiff notes minimal improvement of his symptoms throughout his medical record despite general compliance with treatment recommendations. Dkt. #8-1, pp.27-29.

The Commissioner responds that the ALJ appropriately relied upon the opinion of the medical consultant, Dr. Tzetzo and that Dr. Tzetzo's determination of moderate limitations is not inconsistent with the ALJ's RFC. Dkt. #9-1, pp.5-7. The Commissioner further responds that the ALJ properly relied upon the opinion of the consultative examiner, Dr. Fabiano, which is not contradicted by a treating source opinion, to render a determination as to plaintiff's RFC. Dkt. #9-1, pp.7-8. More specifically, the Commissioner argues that the ALJ's determination that plaintiff could perform simple, routine and repetitive tasks as required by unskilled work and was limited to occasional interaction with supervisors and rare interaction with coworkers and the public is not inconsistent with Dr. Fabiano's opinion that plaintiff was moderately limited in maintaining attention and concentration, relating adequately with others, and appropriately dealing with stress. Dkt. #9-1, pp.9-10. The Commissioner argues that remand to obtain a treating source opinion is not necessary because the record contains sufficient evidence from which the ALJ could assess plaintiff's RFC.

Dkt. #9-1, pp.11-12. Specifically, the Commissioner notes that Dr. Vasquez indicated that plaintiff should pursue employment. Dkt. #9-1, p.12. Finally, the Commissioner argues that the ALJ properly evaluated plaintiff's subjective complaints and assessed his credibility. Dkt. #9-1, pp.13-16.

Plaintiff replies that the ALJ failed to clarify whether the vague limitations identified by Dr. Tzetzo and Dr. Fabiano would render plaintiff off task and absent in excess of customary allowances for full-time work. Dkt. #10, pp.5-8.

Gregory Fabiano, Ph.D., conducted a constulative examination of plaintiff on August 14, 2015. Dkt. #7, p.372. Dr. Fabiano observed that plaintiff's posture was tense; his motor behavior was restless; and his affect was agitated and anxious. Dkt. #7, p.374. Dr. Fabiano found plaintiff's attention and concentration and recent and remote memory skills to be mildly impaired, perhaps due to anxiety or nervousness in the evaluation. Dkt. #7, p.374. His intellectual functioning appeared average. Dkt. #7, p.374. Dr. Fabiano opined that plaintiff

> does not appear to have evidence of limitation in his ability to follow and understand simple directions and simple instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions. He appears to have moderate limitations in his ability to maintain attention and concentration, relate adequately with others, and appropriately deal with stress.
>
> The results of this examination appear to be consistent with psychiatric problems and this may be significant enough to interfere with the claimant's ability to function on a daily basis.

Dkt. #7, p.375. Dr. Fabiano recommended that plaintiff continue with psychological and psychiatric treatment as currently provided. Dkt. #7, p.376. Dr. Fabiano further recommended that plaintiff continue with vocational and educational training as currently provided and suggested that plaintiff may benefit from a case manager or social worker to help him obtain reliable housing. Dkt. #7, p.376. Dr. Fabiano opined that plaintiff's prognosis was guarded given initiation of appropriate supports and interventions as well as the continuance of current psychological and psychiatric treatment. Dkt. #7, p.376. The ALJ afforded Dr. Fabiano's opinion significant weight, stating that it was based on his evaluation of plaintiff and consistent with the medical evidence of record. Dkt. #7, p.22.

Dr. Tzetzo completed a psychiatric review technique on September 18, 2015. Dkt. #7, p.100. In addition to Dr. Fabiano's report, Dr. Tzetzo reviewed records from Lakeshore Behavioral Health, and noted that plaintiff was attending life skills classes and pre-collegiate classes through the City Mission. Dkt. #7, p.100. Dr. Tzetzo determined that plaintiff would be moderately limited in his ability to, *inter alia*:

> maintain attention and concentration for extended periods of time;
>
> perform activities within a schedule, maintain regular attendance, and be punctual to customary tolerances;
>
> work in coordination with or in proximity to others without being distracted by them;
>
> complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

>interact appropriately with the general public;
>
>accept instructions and respond appropriately to criticism from supervisors;
>
>get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
>
>maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and
>
>respond appropriately to changes in the work setting.

Dkt. #7, p.100. Dr. Tzetzo opined that plaintiff appeared capable of handling simple work tasks and that his

>ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact. Similarly, his ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting.

Dkt. #7, p.101. The ALJ afforded Dr. Tzetzo's opinion partial weight, indicating that Dr. Tzetzo's opinion regarding plaintiff's time off task is not consistent with the medical evidence of record. Dkt. #7, p.21-22.

The medical record reveals that plaintiff presented to Buffalo General Hospital for a psychiatric evaluation on November 17, 2014 at the recommendation of his pastor at the City Mission prior to starting a new employment program. Dkt. #7, p.344. Plaintiff was referred for inpatient admission at ECMC because it was determined that a higher level of care was required, but was permitted to leave against medical advice after it was determined that he did not meet the criteria for involuntary admission. Dkt. #7, pp.316 & 347.

Plaintiff began treatment with Lake Shore Behavioral Health on February 4, 2015 for treatment of major depression, generalized anxiety and PTSD. Dkt. #7, pp.319 & 330. On February 16, 2015, Psychiatric Nurse Practitioner ("PNP"), Suzanne Miller opined that plaintiff's depressive and anxious symptoms cause a significant inability for him to function and maintain employment. Dkt. #7, p.327. On March 9, 2015, plaintiff was observed to be restless, with no significant improvement since starting medication three weeks prior. Dkt. #7, pp.447-448. On March 23, 2015, PNP Miller observed that plaintiff was fidgety and wringing his hands and noted that plaintiff's focus and concentration remain poor[1] and that plaintiff continued to deny any significant improvement in symptoms. Dkt. #7, p.449. As of July 28, 2015, plaintiff was "still working on finding the most appropriate combination of medications to best help with his symptoms." Dk. #7, p.443.

On March 1, 2016, plaintiff reported that his anxiety symptoms were beginning to improve on his current medications, but his depression had not improved much. Dkt. #7, p.470. On May 10, 2016, plaintiff's medication was adjusted to address an increase in depression with poor sleep, appetite and energy as well as dissociative symptoms. Dkt. #7, p.473. On May 23, 2016, plaintiff reported that he was feeling less depressed, sleeping better and not feeling as agitated, but was increasingly isolated. Dkt. #7, p.474. On June 16, 2016, plaintiff continued to report overall avoidant tactics to cope with his symptoms, describing himself as frequently isolative and rarely leaving his

---

[1] Plaintiff's attention and concentration were noted within normal limits between February 2, 2016 and May 23, 2016. Dkt. #7, pp. 468, 470, 472 & 474.

home. Dkt. #7, p.444. Because of his level of instability, exploration of the impact of plaintiff's history of trauma on his ability to function was deferred. Dkt. #7, p.445.

On September 9, 2016, plaintiff's Crisis Counselor at Lakeshore Behavioral Health Center, Alexis Lutrell Brown, completed a discharge summary for plaintiff after he missed several scheduled appointments with her and PNP Miller. Dkt. #7, p.417. Ms. Brown opined that plaintiff

> made limited progress during the course of the treatment episode as he experienced various barriers to change and experienced limited success with the use of medications. There was some question as to whether he was in need of a higher level of care which should continue to be evaluated should he return to [treatment].

Dkt. #7, p.418. She further noted that when she last spoke to him, plaintiff reported that he was no longer taking any of his prescribed medications. Dkt. #7, p.418.

Plaintiff returned to his primary care physician, Dr. Vazquez, on November 17, 2016. Dkt. #7, p.381. Dr. Vazquez observed that plaintiff appeared anxious and uncomfortable and opined that his anxiety disorder, depression and PTSD had worsened. Dkt. #7, pp.383-385. Dr. Vazquez renewed plaintiff's psychiatric medication and referred him for psychiatric treatment. Dkt. #7, pp. 383-385. Dr. Vazquez assessed plaintiff's condition as stable on December 21, 2016. Dkt. #7. p.389.  On January 26, 2017, Dr. Vazquex observed that plaintiff appeared uncomfortable and assessed his condition as worsened. Dkt. #7, pp.393-394 On February 18, 2017, plaintiff reported that his depression had improved and was rated as mild, but his anxiety continued to be rated as moderate. Dkt. #7, p.396.

On November 14, 2017, plaintiff presented for an initial psychiatric evaluation with Dr. Cowan at BestSelf Behavioral Health. Dkt. #7, p.490.  He was observed to be angry and hostile. Dkt. #7, pp.494 & 496. Dr. Cowan's impression was that plaintiff's depressive and anxious symptoms cause a significant inability for him to function and maintain employment. Dkt. #7, p.495. Dr. Cowan commented that

> As history of recent years appears to demonstrate, he has not been helped with current pattern of out-patient treatment. I do not regard him as reliable. Earlier reports indicate that he was not so belligerent, but even when he was more agreeable, treatment was not effective. I think he needs a PROS program[2] that he attends 3d/w so staff can really get to know him to sort out what are significant [symptoms] versus non-significant [symptoms]. I told him that he is too young to retire, that he has a good brain with which he can perform a job, and needs a job, that medicine alone would not fix him. He commented that a job would interfere with Disability Income that he is trying to secure.

Dkt. #7, p.496.

The ALJ's determination that Dr. Tzetzo's opinion regarding plaintiff's time off task is not consistent with the medical evidence of record is not supported by substantial evidence. To the contrary, plaintiff's referral for inpatient psychiatric treatment on November 17, 2014 (Dkt. #7, pp.316 & 347); PNP Miller's opinion on February 16, 2015 that plaintiff's depressive and anxious symptoms cause a significant

---

[2] The Personalized Recovery Oriented Services ("PROS"), program is a comprehensive model that integrates rehabilitation, treatment and support services for individuals with serious mental illnesses, with a goal of promoting independence and improving quality of life through, *inter alia*, social and basic life skills training, problem solving and coping skills, housing assistance, vocational training, clinical counseling and health assessment and symptom monitoring and medication management. www.omh.ny.gov

inability for him to function and maintain employment (Dkt. #7, p.327); treatment notes from June 16, 2016 noting plaintiff's isolation and level of instability (Dkt. #7, pp.444-445); PNP Miller's question as to whether plaintiff was in need of a higher level of care than he had been receiving (Dkt. #7, p.418); and Dr. Cowan's impression on November 14, 2017 that plaintiff's depressive and anxious symptoms cause a significant inability for plaintiff to function and maintain employment, along with a recommendation that plaintiff enroll in a PROS program (Dkt. #7, p.496), all support a determination that plaintiff would be significantly limited in his ability to complete a normal workday and workweek without interruptions from his mental impairments. Such a determination is also consistent with Dr. Fabiano's opinion that plaintiff would have moderate limitations in his ability to maintain attention and concentration and that plaintiff's psychiatric problems may be significant enough to interfere with his ability to function on a daily basis. Dkt. #7, p.375.

While Dr. Tzetzo's assessment of moderate limitations does not necessarily mean that plaintiff's capacity is at a level that is unacceptable to the workforce, remand is required to clarify the impact of such functional limitations on plaintiff's capacity to work on a sustained basis. *See Smith v. Comm'r of Soc. Sec'y*, 631 F.3d 632, 637 (3d Cir. 2010) (noting that guidance from SSA indicates that moderately limited should be selected when an individual's capacity to perform the activity is impaired and that the degree and extent of such capacity or limitation must be described in the narrative format of the Mental Residual Functional Capacity Assessment); *Hunter v. Berryhill*, 373 F.Supp.3d 393, 397 (E.D.N.Y. 2019) (remanding

for clarification as to whether plaintiff's difficulty maintaining attention and concentration would preclude ability to work on a sustained basis); *See also Williams v. Comm'r of Soc. Sec'y*, 18-CV-1027, 2020 WL 4904947, at *6 (W.D.N.Y. Aug. 20, 2020) (recognizing that although moderate limitations in work-related functions do not necessarily prevent a claimant from performing unskilled simple and repetitive tasks, an ALJ must explain how plaintiff would be able to perform such work despite his difficulties in, *inter alia*, completing a normal workday).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted in so far as plaintiff seeks remand for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
                **September 23, 2020**

                                         *s/ H. Kenneth Schroeder, Jr.*
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**